**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ARTHUR DEKENIPP**, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>**SET FORTH, INC.,**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Arthur Dekenipp ("Plaintiff") brings this Class Action Complaint against Set Forth, Inc. ("Set Forth"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. Set Forth is a privately held corporation incorporated in Delaware, with its principal place of business in Illinois. Set Forth provides online account management services for individuals and business for debt relief programs.[1] As such, Set Forth stores a litany of highly sensitive personally identifiable information about their current and former consumers.

2. Set Forth reported being subjected to a cyberattack in May 2024 (the "Data Breach").[2] The breach compromised sensitive information, including customer names, addresses,

[1] https://www.setforth.com/business/about-forth/ (last viewed November 18, 2024).
[2] Exhibit A, Plaintiff's notice of data breach.

and Social Security numbers. According to Set Forth's notice, the breach affected the personal data of over 1.5 million customers. [3]

3. This class action stems from the cyberattack and Data Breach, during which cybercriminals illegally obtained the sensitive personal information of the Plaintiff and Class Members, including, at a minimum, names, addresses, and Social Security numbers ("PII"). The Plaintiff is bringing this lawsuit against Set Forth for its failure to secure and protect the PII. As a result of Set Forth's negligence, the PII is now in the possession of cybercriminals who are likely to exploit it indefinitely.

4. Plaintiff brings this class action on behalf of himself, and others similarly situated, to address Set Forth's failure to adequately safeguard Class Members' PII and its failure to notify Plaintiff and Class Members that their information was likely accessed by an unknown third party, including the specific types of information compromised.

5. Set Forth handled the PII in a reckless and negligent manner. Specifically, the PII was stored on Set Forth's computer system and network in a state that was vulnerable to cyberattacks. Upon information and belief, the method of the Data Breach and the risk of unauthorized disclosure of the Plaintiff's and Class Members' PII were known risks to Set Forth.

6. As such, Set Forth was on notice that failing to implement adequate security measures to address these risks left the PII in a dangerously unprotected condition.

7. Because of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value

---

[3] *Id; see also* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/5c00fedb-134a-4436-b778-5df30b84cdab.html (last viewed November 18, 2024).

of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

8. By obtaining, collecting, using, and profiting from the PII of Plaintiff and Class members, Set Forth assumed legal duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Set Forth admits its systems, which contain Plaintiff and Class Member's PII, were attacked.

9. The exposed PII of the Plaintiff and Class Members can—and likely will—be sold on the dark web. In fact, it is highly probable that the Plaintiff's and Class Members' PII has already been published and circulated on the dark web.

10. Hackers can sell the unencrypted, unredacted PII to criminals, further exacerbating the risks. As a result, the Plaintiff and Class Members now face a lifelong threat of identity theft, significantly heightened by the exposure of their Social Security numbers—the gold standard for identity thieves.

11. The compromise of this PII was a direct result of Set Forth's negligent and/or careless actions, omissions, and failure to adequately protect the PII of the Plaintiff and Class Members. Moreover, despite Set Forth's failure to prevent the Data Breach, it has not yet taken sufficient steps to notify affected individuals.

12. Plaintiff brings this action on behalf of all persons whose PII was compromised because of Set Forth's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Set Forth's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents.

13. Plaintiff and Class Members have suffered injuries as a direct result of Set Forth's actions and omissions. These injuries include but are not limited to:

(i) the diminished or lost value of their PII;

(ii) out-of-pocket expenses incurred to prevent, detect, and recover from identity theft, tax fraud, and/or unauthorized use of their PII;

(iii) lost time and opportunity costs associated with efforts to mitigate the consequences of the Data Breach, including, but not limited to, time spent addressing the breach; and

(iv) the ongoing and heightened exposure of their PII, which remains unencrypted and accessible to unauthorized third parties, increasing the risk of misuse; and may still be stored in Set Forth's systems, subject to further unauthorized disclosures due to Set Forth's failure to implement appropriate and sufficient safeguards.

14. Set Forth disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded. Set Forth further disregarded their rights by failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures for the encryption of data, even for internal use.

15. Because of the Data Breach, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

16. Plaintiff Arthur Dekenipp is a resident and citizen of Alvin, Texas, and intends to remain there throughout this litigation.

17. Defendant Set Forth, Inc.is a Delaware Corporation, with its principal place of business located at 1900 East Golf Road, Suite 550 Schaumburg, Illinois 60173.

18. Set Forth's registered agent is VCorp Agent Services, Inc., located at 208 S. Lasalle Street, Suite 814 Schaumburg, Illinois 60173.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff is a citizen and resident of Texas and many of Set Forth's customers have different state citizenships.

20. This Court has personal jurisdiction over Set Forth because Set Forth operates, and is headquartered, in this District and conducts substantial business in this District.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(l) because a substantial part of the events giving rise to this action occurred in this District. Set Forth is also based in this District, maintains Plaintiff's and Class Members' PII in this District, and has caused harm to Plaintiff and Class Members from and/or in this District.

22. Class Members are victims of the Data Breach and are domiciled around the country. For example, the Maine attorney general was notified that 3,285 of its residents were affected by the Data Breach.[4] The South Carolina attorney general was also notified that Set

[4] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/5c00fedb-134a-4436-b778-5df30b84cdab.html (last viewed November 18, 2024)

Forth's data breach affected its residents.[5] Plaintiff is a citizen of Texas and thus minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

## FACTUAL ALLEGATIONS

***The Breach***

23. Set Forth claims that an unauthorized party accessed Set Forth's payment platform in May 2024 and acquired PII. The PII at issue includes name, address, and social security number.

24. Upon information and belief, and absent any indication to the contrary from Set Forth, the Plaintiff's and Class Members' PII remains in the possession of the cybercriminals. This information has been in their control for over ten months, during which time Set Forth failed to provide timely notice to the Plaintiff or Class Members.

25. Further, the PII accessed and exfiltrated was likely not encrypted because if properly encrypted, then cybercriminals would not have acquired and accessed Plaintiff's and Class Members' PII.

26. Set Forth had a duty, arising from contractual obligations, industry standards, and common law, to take reasonable measures to protect and safeguard the Plaintiff's and Class Members' PII from unauthorized access.

27. Set Forth agreed to and undertook legal duties to maintain the protected PII entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

[5] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.consumer.sc.gov/sites/consumer/files/Documents/Secur ity%20Breach%20Notices/SetForthInc.pdf (last viewed November 18, 2024).

28. The PII held by Set Forth in its computer system and network included the PII of Plaintiff and Class Members.

29. By obtaining, collecting, using, and profiting from Plaintiff's and Class Members' PII, Set Forth assumed legal and equitable duties and knew or should have known that it was responsible to protect Plaintiff's and Class Members' PII from unauthorized disclosure.

30. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII.

31. Plaintiff and Class Members relied on Set Forth to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosure of this PII.

32. Plaintiff and Class Members directly or indirectly entrusted Set Forth with sensitive and confidential information, including their PII, which includes Social Security numbers, information that is static, does not change, and can be used to commit myriad financial crimes.

33. Plaintiff and Class Members entrusted Set Forth with their PII, relying on Set Forth to maintain its confidentiality, secure storage, and use solely for legitimate business purposes. They also expected that any disclosure of this information would be authorized and controlled. Plaintiff and Class Members now demand that Set Forth implement proper safeguards to protect their PII.

34. Set Forth had a duty to implement reasonable measures to protect the PII of the Plaintiff and Class Members from unauthorized access and involuntary disclosure to third parties.

35. Set Forth failed to implement reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was responsible for safeguarding. This failure directly led to the exposure of the Plaintiff's and Class Members' PII.

36. As a result of Set Forth's inadequate security measures and failure to adopt practices appropriate for protecting sensitive, unencrypted information, cybercriminals, upon information and belief, infiltrated Set Forth's systems and unlawfully accessed and stole the Plaintiff's and Class Members' PII.

37. The unencrypted PII of the Plaintiff and Class Members is highly likely to be sold on the dark web, as this is a common tactic used by hackers. Additionally, unencrypted PII may be exploited by companies for targeted marketing without the consent of the Plaintiff and Class Members. As a result, unauthorized individuals can easily access and misuse this sensitive information.

38. Due to Set Forth's failure to adequately protect and safeguard the Plaintiff's and Class Members' PII, an unauthorized third party was able to infiltrate Set Forth's network and access the sensitive information stored on its systems.

***Plaintiff's Experience***

39. Plaintiff Dekenipp has been a longstanding customer of Set Forth. To receive services and/or products, Plaintiff was required to provide personal information, including payment details.

40. Plaintiff entrusted Set Forth with his personal information, relying on the expectation that it would be protected in accordance with Set Forth's internal policies, as well as applicable state and federal laws.

41. In May 2024, Set Forth's network underwent a cyberattack and cybercriminals were able to access Plaintiff and the other Class Members' Private payment information.

42. Plaintiff is very careful about sharing his sensitive PII. Plaintiff has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

43. Plaintiff takes careful measures to protect his sensitive personal information by storing any documents containing such data in a secure location or properly disposing of them. Additionally, Plaintiff consistently creates unique usernames and passwords for his online financial accounts, which are linked to his payment cards, ensuring their security.

44. Because of the Data Breach, Set Forth directed Plaintiff to take certain steps to protect his PII and otherwise mitigate his damages.

45. As a result of the Data Breach, Plaintiff and Class Members are now at an increased and immediate risk of fraud and identity theft. Both Plaintiff and Class Members must vigilantly monitor their financial accounts, both now and in the future, to protect against potential identity theft.

46. Plaintiff has suffered actual harm, including damages and a reduction in the value of his personal information—a form of intangible property that he entrusted to Set Forth, which was compromised due to the Data Breach. Plaintiff has experienced lost time, frustration, disruption, and inconvenience as a result of the breach, along with anxiety and heightened concerns over the potential loss of his privacy.

47. Plaintiff now faces imminent and ongoing harm due to the heightened risk of fraud, identity theft, and misuse of his personal information, which has been exposed to unauthorized third parties and potentially criminal actors.

48. Plaintiff has a continuing interest in ensuring that Plaintiff's PII, which, upon information and belief, remain backed up in Set Forth's possession, is protected, and safeguarded from future breaches.

***Set Forth Was Aware of the Risks of a Data Breach.***

49. In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[6] In 2023, a record 3,205 data breaches occurred in the United States, resulting in about 349,221,481 sensitive records being exposed, a greater than 100% increase from 2019.[7]

50. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so that they are aware of, and prepared for, a potential attack.[8]

***Value of PII***

51. PII of individuals remains of high value to criminals, as shown by the prices they will pay through the dark web. Many sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10]

52. Accordingly, the information compromised in the Data Breach holds significantly greater value than, for example, credit card information in a retail data breach. In the latter case,

---

[6] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org.

[7] https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited Nov. 18, 2024)

[8] FBI, Secret Service Warn of Targeted, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbisecret-service-wam-of-targeted-ransomware (last accessed Nov. 18, 2024).

[9] *Your personal data is for sale on the dark web. his e's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it- costs/ (last accessed Nov. 18, 2024).

[10] *How Much Your Personal Information Is Selling for on the Dark Web,* Experian, Dec. 6, 2017, *available at:* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for- on-the-dark-web/ (last accessed Nov. 18, 2024)

victims can simply cancel or close their credit and debit card accounts, but the compromised data here cannot be easily mitigated.

53. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, financial services, and housing or even give false information to police.

54. The fraudulent activity resulting from the Data Breach may not come to light for years.

55. According to the account monitoring company, LogDog, PII sells for $50 and up on the Dark Web.[11]

56. Further, there may be a time lag between when harm occurs versus when it is discovered, and between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[12]

57. At all relevant times, Set Forth knew, or reasonably should have known, the critical importance of safeguarding the PII of Plaintiff and Class Members, as well as the foreseeable consequences that would result from a breach of Set Forth's data security system.

58. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

---

[11] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals,* Naked Security (Oct. 3, 2019), https://news.sophos.com/en-us/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/

[12] *Report to Congressional Requesters,* GAO, at 29 (June 2007), *available at: https://www.gao.gov/assets/gao- 07-737.pdf* (last accessed Nov. 13, 2024).

59. The injuries to Plaintiff and Class Members were directly and proximately caused by Set Forth's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

60. By obtaining, collecting, using, and profiting from Plaintiff's and Class Members' PII, Set Forth assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure.

61. Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

62. Plaintiff and the Class Members relied on Set Forth to implement and follow adequate data security policies and protocols, to keep their PII confidential and securely maintained, to use such PII solely for business purposes, and to prevent the unauthorized disclosures of the PII.

***Set Forth's Acquisition, Collection, and Storage of Plaintiff's and Class Members' PII***

63. Set Forth acquired, collected, and stored the PII of Plaintiff and Class Members.

64. By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Set Forth assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

65. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Set Forth to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Failure to Adequately Protect Plaintiff's and Class Members' PII***

66. Set Forth could have prevented this Data Breach by properly securing and encrypting the systems containing the PII of Plaintiff and Class Members.

67. Set Forth's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Set Forth to protect and secure sensitive data they possess.

68. Despite the prevalence of public announcements of data breach and data security compromises, Set Forth failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

69. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

70. The consequences of Set Forths's failure to secure the PII of Plaintiff and Class Members are profound and enduring. Once PII is compromised, it can be fraudulently exploited for years, causing ongoing harm to the victims.

71. To prevent and detect unauthorized cyber-attacks, Set Forth should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy

Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and Domain Keys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls-including file, directory, and network share permissions- with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or

compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[13]

72. Accordingly, to prevent and detect cyber-attacks, including the cyber-attack that caused the Data Breach, Set Forth should have implemented measures recommended by the United States Cybersecurity & Infrastructure Security Agency (CISA). These include updating and patching applications and operating systems to address vulnerabilities that are frequently targeted in ransomware attacks; exercising caution with email links and website addresses to avoid phishing attempts and malicious sites; being vigilant when opening email attachments, especially compressed files; ensuring personal information is submitted only on encrypted websites; verifying the legitimacy of emails by directly contacting the sender using trusted contact information; staying informed about emerging cybersecurity threats and phishing tactics via resources like the Anti-Phishing Working Group and CISA alerts; and using preventative software such as updated antivirus programs, firewalls, and email filters to mitigate malicious network activity.

---

[13] *Report to Congressional Requesters,* GAO, at 29 (June 2007), *available at: https://www.gao.gov/assets/gao-07-737.pdf* (last accessed Nov. 18, 2024).

73. Further, to prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Set Forth should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

*Secure internet-facing assets*

- Apply latest security updates;
- Use threat and vulnerability management;
- Perform regular audit; remove privileged credentials;

*Thoroughly investigate and remediate alerts*

- Prioritize and treat commodity malware infections as potential full compromise;

*Include IT Pros in security discussions*

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

*Build credential hygiene*

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

*Apply principle of least-privilege*

- Monitor for adversarial activities;
- Hunt for brute force attempts;
- Monitor for cleanup of Event Logs;
- Analyze logon events;

*Harden infrastructure*

- Use Windows Defender Firewall;

- Enable tamper protection;
- Enable cloud-delivered protection; and
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[14]

74. Set Forth's failure to adequately safeguard Plaintiff's and Class Members' PII allowed an unauthorized third party to infiltrate its network and gain access to its databases and system configuration files.

75. Specifically, Set Forth acknowledges that, on or around May 7 and June 20, 2024, an unauthorized party accessed its network and deleted critical databases and system configuration files.

76. Given that Set Forth was storing the PII of Plaintiff and Class Members, Set Forth should have implemented all the above measures to prevent and detect cyberattacks.

77. As the result of computer systems needing security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, Set Forth negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII.

***Failure to Comply with FTC Guidelines and Industry Standards***

78. The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should influence all business decision-making.

79. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that

---

[14] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed Nov. 18. 2024).

businesses should protect the PII that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[15]

80. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

81. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

82. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect private data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section *5* of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions clarify the measures businesses take to meet their data security obligations.

83. Set Forth failed to properly implement basic data security practices. This failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's

[15] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

and Class Members' PII constitutes an unfair act or practice prohibited by Section *5* of the FTC Act, 15 U.S.C. § 45.

84. Set Forth was always fully aware of its obligation to protect the PII of Plaintiff and Class members. It was also aware of the significant ramifications that would result from its failure to do so.

85. Several best practices have been identified that at a minimum should be implemented by professional service providers like Set Forth, including, but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, antivirus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

86. Set Forth failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, without limitation, PR.AC-I, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-I, PR.DS-1, PR.DS-5, PR.PT-I**,** PR.PT-3, DE.CM-I, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

***Failure to Safeguard PII Caused Harm and Heightened Risk of Identity Theft***

87. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Set Forth.

88. The consequences of Set Forth's failure to secure Plaintiff's and the Class's PII are grave. Identity theft occurs when an individual's personal information—such as name, account number, Social Security number, financial account details, or other sensitive data—is used without authorization to commit fraud or other crimes. Experts estimate that one in four individuals who receive a data breach notification will fall victim to identity fraud.

89. Due to Set Forth's failure to prevent and promptly detect the Data Breach, Plaintiff and the proposed Class have suffered and will continue to endure damages, including financial losses, wasted time, anxiety, and emotional distress. They have experienced, or are at increased risk of experiencing:

a. Loss of control over how their PII is used;

b. Diminished value of their PII;

c. Compromise and ongoing exposure of their PII;

d. Out-of-pocket expenses for preventing, detecting, recovering from, and addressing identity theft or fraud;

e. Lost time and wages spent mitigating the effects of the Data Breach, such as researching and implementing measures to prevent and recover from identity theft and fraud;

f. Delayed receipt of tax refunds;

g. Unauthorized use of stolen PII; and

h. Continued vulnerability of their PII, which remains in Set Forth's possession and at risk of further breaches unless adequate protections are implemented.

90. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

91. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

92. It can take victims years to identity PII theft, giving criminals plenty of time to milk that information for cash.

93. One such example of criminals using PII for profit is the development of "Fullz" packages.

94. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

95. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

96. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

97. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good" Set Forth did not rapidly report to Plaintiff and the Class that their PII had been stolen.

98. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

99. In addition to out-of-pocket expenses that can exceed thousands of dollars, and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

100. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to be remain vigilant against unauthorized data use for years or even decades to come.

101. The Federal Trade Commission ("FTC'') has also recognized that consumer data is a new and valuable form of currency.

102. The FTC has issued many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

(1) encrypting information stored on computer networks;

(2) retaining payment card information only as long as necessary;

(3) properly disposing of personal information that is no longer needed;

(4) limiting administrative access to business systems;

(5) using industry-tested and accepted methods for securing data;

(6) monitoring activity on networks to uncover unapproved activity;

(7) verifying that privacy and security features function properly;

(8) testing for common vulnerabilities; and

(9) updating and patching third-party software.

103. According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[16] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

104. Set Forth's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Plaintiff's and Class Members' Damages***

105. To date, Set Forth has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach.

106. Plaintiff and Class Members have been damaged by the compromise of their PII in the Data Breach.

---

[16] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited Nov. 13, 2024).

107. As a direct and proximate result of Set Forth's conduct, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

108. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, financial or medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

109. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

110. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

111. Set Forth provided no compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

112. Plaintiff and Class Members have been damaged by the compromise of their Personal Information in the cyber-attack. Moreover, Set Forth's delay in noticing affected persons of the theft of their PII prevented early mitigation efforts and compounded the harm.

113. Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out- of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring Social Security number; financial, medical, and bank accounts; and credit reports for unauthorized activity for years to come.

114. Moreover, Plaintiff and Class Members have an interest in ensuring that their Personal Information, which is believed to remain in the possession of Set Forth, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing Personal Information is inaccessible online and that access to such data is password protected.

## CLASS ALLEGATIONS

115. Plaintiff brings this nationwide class action on behalf of himself and on behalf of others similarly situated under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

116. The Nationwide Class that Plaintiff seek to represent is defined as follows:

> **All individuals residing in the United States whose PII was compromised in the Data Breach discovered by Set Forth in May 2024, including all those individuals who received notice of the breach (the "Class").**

117. Excluded from the Class are the following individuals and/or entities: Set Forth and Set Forth's parents, subsidiaries, affiliates, officers and directors, and any entity in which Set Forth has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

118. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

119. **Numerosity**: Fed R. Civ. P. 23(a)(l): Class Members are so many that joinder of all members is impracticable. Upon information and belief, Set Forth has at least 1.5 million customers whose PII may have been improperly accessed in the Data Breach, and each member is apparently identifiable within Set Forth's records.[17]

120. **Commonality**: Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a. Whether and to what extent Set Forth had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Set Forth had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

---

[17] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/7bb4247e-a706-473f-b7ea-f7f3f74db595.html (last viewed November 18, 2024).

c. Whether Set Forth had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

d. Whether Set Forth failed to adequately safeguard the PII of Plaintiff and Class Members;

e. When Set Forth learned of the Data Breach;

f. Whether Set Forth adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g. Whether Set Forth violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h. Whether Set Forth failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Set Forth adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Set Forth engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k. Whether Set Forth violated the consumer protection statutes invoked herein;

l. Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages because of Set Forth's wrongful conduct;

m. Whether Plaintiff and Class Members are entitled to restitution because of Set Forth's wrongful conduct; and

n. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced because of the Data Breach.

121. **Typicality**: Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised because of the Data Breach, because of Set Forth's misfeasance.

122. This class action is also appropriate for certification because Set Forth has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Set Forth's policies challenged here apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Set Forth's conduct toward the Class as a whole, not on facts or law applicable only to Plaintiff.

123. **Adequacy**: Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

124. **Superiority:** Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged here; it will permit many Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit

the adjudication of modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Set Forth. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

125. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Set Forth would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

126. Adequate notice can be given to Class Members directly using information maintained in Set Forth's records.

127. Unless a Class-wide injunction is issued, Set Forth may continue in its failure to properly secure the PII of Class Members, Set Forth may continue to act unlawfully as set forth in this Complaint.

128. Set Forth has acted or refused to act on grounds generally applicable to the Classes and thus final injunctive or corresponding declaratory relief for the Class Members is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

129. Issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

a. Whether Set Forth owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b. Whether Set Forth failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

c. Whether an implied contract existed between Set Forth on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

d. Whether Set Forth breached the implied contract;

e. Whether Set Forth adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

f. Whether Set Forth failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

g. Whether Set Forth engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and

h. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief because of Set Forth's wrongful conduct.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

130. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

131. Set Forth owed a duty of care to Plaintiff and the Class Members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems, as alleged herein. These common law duties existed because Plaintiff and the Class Members were the foreseeable and probable victims of any inadequate security practices in Set Forth's affirmative development and maintenance of its data security systems and its hiring of third-party providers entrusted with accessing, storing, safeguarding, handling, collecting, and/or protecting Plaintiff's and the Class Members' PII. In fact, not only was it foreseeable that Set Forth and the Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Set Forth also knew that it was more likely than not that Plaintiff and other Class Members would be harmed by such exposure and theft of their PII.

132. Set Forth's duties to use reasonable security measures also arose as a result of a special relationship with Plaintiff and the Class Members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiff's and the Class Members' PII was entrusted to Set Forth based on the understanding that Set Forth would take adequate security precautions. Moreover, Set Forth was capable of protecting its network and systems, and the PII it stored on them, from unauthorized access, but failed to do so.

133. Set Forth breached its duties when it failed to use security practices that would protect the PII provided to it by Plaintiff and the Class Members, thus resulting in unauthorized exposure and access to their PII.

134. Set Forth further breached its duties by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols to

comply with the applicable laws and safeguard and protect Plaintiff's and the Class Members' PII within its possession, custody, and control.

135. As a direct and proximate cause of Set Forth's failure to use appropriate security practices and failure to select a third-party provider with adequate data security measures, Plaintiff's and the Class Members' PII was exposed, disseminated, and made available to unauthorized third parties.

136. Set Forth admitted that Plaintiff's and the Class Members' PII was wrongfully disclosed as a result of the Data Breach.

137. But for Set Forth's wrongful and negligent breach of its duties owed to Plaintiff and the Class Members, their PII would not have been compromised.

138. Neither Plaintiff nor Class members contributed to the Data Breach or subsequent misuse of their PII as described in this Complaint.

139. The Data Breach caused direct and substantial damages to Plaintiff and the Class Members, as well as the likelihood of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud and identity theft.

140. As a direct and proximate result of Set Forth's negligence, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data

Breach not fully disclosed by Set Forth, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On behalf of Plaintiff and the Class)**

141. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

142. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Set Forth of failing to use reasonable measures to protect PII.

143. Set Forth violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Set Forth's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach.

144. Set Forth's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

145. Plaintiff and the Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

146. Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of Set Forth's failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class Members.

147. As a direct and proximate result of Set Forth's negligence, Plaintiff and the Class Members have been injured and are entitled to damages in an amount to be proven at trial. Their injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Set Forth, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

148. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

149. Plaintiff and the Class entrusted their PII to Set Forth. In so doing, Plaintiff and the Class entered implied contracts with Set Forth by which Set Forth agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if its data had been breached and compromised or stolen.

150. Plaintiff and the Class fully performed their obligations under the implied contracts with Set Forth.

151. Set Forth breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of

Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that their personal information was compromised because of the Data Breach.

152. As a direct and proximate result of Set Forth's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

153. As a direct and proximate result of Set Forth's above-described breach of implied contract, Plaintiff and the Class have a right to recover actual, consequential, and nominal damages.

**COUNT IV**
***IN THE ALTERNATIVE*—UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

154. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

155. This Count is pled in the alternative to Count III.

156. Plaintiff and Class Members conferred a monetary benefit on Set Forth, by providing Set Forth with their valuable PII.

157. Set Forth enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

158. Instead of implementing reasonable security measures to prevent the Data Breach, Set Forth chose to cut costs by using cheaper, ineffective security, directly sacrificing the protection of Plaintiff and Class Members. As a result, Plaintiff and Class Members suffered harm due to Set Forth's failure to provide the necessary security.

159. Under the principles of equity and good conscience, Set Forth should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Set Forth failed to implement appropriate data management and security measures that are mandated by industry standards.

160. Set Forth acquired the monetary benefit and PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

161. If Plaintiff and Class Members knew that Set Forth had not secured their PII, they would not have agreed to provide their PII to Set Forth.

162. Plaintiff and Class Members have no adequate remedy at law.

163. As a direct result of Set Forth's conduct, Plaintiff and Class Members have suffered and will continue to suffer injuries, including: (i) identity theft; (ii) loss of control over their PII; (iii) compromise, publication, or theft of their PII; (iv) out-of-pocket expenses for identity theft prevention and recovery; (v) lost productivity and efforts to mitigate the breach's effects; (vi) ongoing risk of unauthorized disclosure of their PII; and (vii) future costs for continued efforts to prevent, detect, and repair the effects of the breach.

164. As a direct and proximate result of Set Forth's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

165. As such, Set Forth should be compelled to disgorge into a common fund or constructive trust the proceeds it unjustly received from Plaintiff and Class Members, for their benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Class Members, requests judgment against Set Forth and that the Court grant the following:

A. An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the proposed Class;

B. For injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. For an award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined;

D. For an award of restitution or disgorgement, in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: November 19, 2024

Respectfully submitted,

By: */s/Andrea R. Gold*

Andrea R. Gold (Bar No. 6282969)
David Lawler (*pro hac vice forthcoming*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, DC 20006

Phone: (202) 973-0900
agold@tzlegal.com
dlawler@tzlegal.com

Sabita J. Soneji, (*pro hac vice forthcoming*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Phone: (510) 254-6808
ssoneji@tzlegal.com

*Counsel for Plaintiff and the Proposed Class*